Filed 10/11/18

CERTIFIED FOR PARTIAL PUBLICATION*

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| R.B., | |
| Plaintiff and Appellant, | E068760 |
| v. | (Super.Ct.No. SWD1700469) |
| D.R., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Bradley O. Snell, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Holstrom, Block & Parke and Ronald B. Funk for Plaintiff and Appellant.

Law Office of Jim Husen and Jim Husen for Defendant and Respondent.

R.B. (father) and D.R. (mother) are citizens of India who were married in India. They came to California, where, in October 2013, their only child — a daughter — was born.  In December 2016, the father allegedly slapped the child and hit the mother.  In

---

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV.B and V and Appendix A.

1

February 2017, the mother discovered that the father was involved with another woman. She immediately left for India with the child.

On February 11, 2017, in India, the mother obtained a restraining order giving her sole custody of the child. On February 24, 2017, in California, the father obtained an ex parte order (later stayed) giving him sole custody of the child.

After an evidentiary hearing, the trial court ruled that it had jurisdiction, but that India was a more appropriate forum. It therefore stayed the California proceeding.

The father appeals. He contends that the trial court erred by finding that India was a more appropriate forum, because:

1. India did not have concurrent jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). (Fam. Code, § 3400 et seq.)

2. The trial court misevaluated the statutorily relevant factors.

In the published portion of this opinion, we will hold that India could be an inconvenient forum even if it did not have concurrent jurisdiction under the UCCJEA. In the nonpublished portion, we find no other error. Hence, we will affirm.

I

FACTUAL BACKGROUND

The following facts are taken from the testimony and exhibits introduced at the evidentiary hearing. We do not consider evidence introduced at earlier hearings. We also do not consider the parties' supporting and responsive declarations, as these were not introduced at the evidentiary hearing. (*In re Marriage of Shimkus* (2016) 244

2

Cal.App.4th 1262, 1271 ["as with any evidence, a declaration must be marked and offered and is subject to objections before admission."].)

The father and the mother are both citizens of India. In November 2012, they came to California. The father had a work visa; the mother had a dependent visa. They intended to go back to India permanently someday.

The child was born in California in October 2013. Thus, she is an American citizen. India does not allow dual citizenship, but the child has overseas citizen status, which is equivalent to a lifetime visa.

After the child was born, the parents "went back and forth between California and India several times . . . ." They wanted her to "be very much aware of Indian culture and tradition" and to spend time with both sets of grandparents. The child speaks both English and Telugu, the parents' native language.

On July 24, 2016, the family went to India so they could spend time with the grandparents. The mother and child stayed there for about five and a half months. The father left sometime before the mother did.

On December 4, 2016, while still in India, the parents had an argument; afterward, the father asked the child, "Do you want me and grandmom, or do you want mom?" She said, "No, I want mom only." The father slapped the child "hard" on the cheek, leaving red marks; he also hit the mother behind the ear.

On January 10, 2017, the mother and child left India and returned to California. In February 2017, the mother "uncovered infidelity" on the part of the father. On February

7, 2017, while the father was in Florida, the parents argued over the phone; the father told the mother to get out of the house.

Later that day, the father texted the mother: "THEN HERE IS MY FINAL DECISION. Pack up and go back to India and do whatever you want . . . police court or whatever, I will face it. I will sell the house as well." (Ellipsis in original.) The mother understood the mention of police court to refer to a potential prosecution of the father for domestic violence.

The mother immediately took the child and went to India. On February 10, 2017, she filed a petition for a restraining order in an Indian court. On February 11, 2017, the Indian court ordered: "[The father] or his family members are hereby restrained from taking the [child] from the custody of the [mother] till the next date of hearing."

On April 5, 2017, the mother filed a petition for guardianship in the Indian court. On April 24, 2017, the Indian court gave her temporary guardianship.

A hearing was set in the Indian court for either June 21 or 23, 2017.

II

PROCEDURAL BACKGROUND

On February 23, 2017, the father filed a petition for custody. He also filed an ex parte application for temporary emergency custody orders.[1] The trial court granted the ex parte application, giving the father sole custody.

---

[1] There is a dispute — which we need not resolve — as to whether the father already knew that the Indian court had issued a restraining order.

4

The mother filed a responsive declaration asking that the case be heard in India, along with a request for orders seeking to quash service of summons. On March 22, 2017, the trial court stayed its ex parte custody order pending a determination regarding its jurisdiction.

The mother filed a trial brief, arguing that India was the child's home state and, alternatively, that India was a more appropriate forum.

On April 27, 2017, the trial court held an evidentiary hearing. On May 15, 2017, it issued a statement of decision. It ruled that California had home state jurisdiction under the UCCJEA. However, it further ruled that California was an inconvenient forum and that India was a more appropriate forum. It therefore stayed the father's petition, on the condition that the mother move forward with a custody proceeding in India.

Such an order granting a motion to stay an action on the ground of inconvenient forum is appealable. (Code Civ. Proc., § 904.1, subd. (a)(3).)

III

LEGAL BACKGROUND

This case is governed by the UCCJEA, as adopted in California.[2] "The UCCJEA is the exclusive method for determining subject matter jurisdiction for child custody proceedings in California. [Citations.]" (*In re A.C.* (2017) 13 Cal.App.5th 661, 668.)

_____

[2] India is not a party to the Hague Convention on the Civil Aspects of International Child Abduction. (Status Table <https://www.hcch.net/en/instruments/conventions/status-table/?cid=24>, as of October 9, 2018.)

5

Its key jurisdictional provision is Family Code section 3421, subdivision (a) (section 3421(a)), which provides:

"Except as otherwise provided in Section 3424, a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true:

"(1)  This state is the home state[3] of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent . . . continues to live in this state.

"(2)  A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 . . . , and both of the following are true:

"(A)  The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

"(B)  Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

---

**3**    "'Home state' means the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." (Fam. Code, § 3402, subd. (g).)

"(3)  All courts having jurisdiction under paragraph (1)  or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 . . . .

"(4)  No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

The inconvenient forum provision of the UCCJEA is Family Code section 3427 (section 3427), which provides:

"(a)  A court of this state that has jurisdiction under this part to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. . . .

"(b)  Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

"(1)  Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

"(2)  The length of time the child has resided outside this state.

"(3)  The distance between the court in this state and the court in the state that would assume jurisdiction.

"(4)  The degree of financial hardship to the parties in litigating in one forum over the other.

"(5)  Any agreement of the parties as to which state should assume jurisdiction.

"(6)  The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.

"(7)  The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

"(8)  The familiarity of the court of each state with the facts and issues in the pending litigation.

"(c)  If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state . . . ."

A foreign country is treated as a "state" for purposes of the UCCJEA.  (Fam. Code, § 3405, subd. (a).)

IV

CONCURRENT JURISDICTION

A.    *An Inconvenient Forum Finding Did Not Require That India Have*

*Concurrent Jurisdiction under the UCCJEA.*

The father contends that the trial court erred by ruling that India was a more appropriate forum because it did not find, and could not have found, that India had

8

concurrent jurisdiction under the UCCJEA.  In his view, a California court cannot apply the inconvenient forum doctrine unless the other state already has such concurrent jurisdiction; under section 3421(a)(1), California has exclusive jurisdiction, and India has no jurisdiction at all, and so the trial court erred.

As we will discuss, this argument is premised on outdated law, plus an unfortunate dictum in *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478 belatedly restating that law as if it were still good.  We decline to let this dictum lead us astray.

The UCCJEA went into effect on January 1, 2000.  (Stats. 1999, ch. 867.)  It repealed and replaced (*id.*, § 2, p. 6199) the Uniform Child Custody Jurisdiction Act (UCCJA), which had gone into effect on January 1, 1974.  (Civ. Code, former §§ 5150-5174, Stats. 1973, ch. 693; see also Fam. Code, former §§ 3400-3425, Stats. 1992, ch. 162, §§ 10, 13, pp. 553-562, 722.)  In many respects, the two statutory schemes are similar.  Obviously, however, they are not identical.  Accordingly, "[c]ases interpreting the UCCJA are instructive in deciding cases under the UCCJEA except where there is a conflict between the two statutory schemes.  [Citations.]"  (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037, fn. 18.)

Under the UCCJA, it was possible for multiple states to have concurrent jurisdiction (Fam. Code, former § 3403, subd. (a); *Marriage of Torres* (1998) 62 Cal.App.4th 1367, 1374-1375); the UCCJA merely provided rules for determining which state should *exercise* its jurisdiction.  (Fam. Code, former §§ 3406, subds. (a), (c), 3407;

9

see also 9 pt. 1A West's U. Laws Ann. (1999) U. Child Custody Jurisdiction Act, com. to § 3, p. 308.)

These rules were as follows: "The first step in the UCCJA's orderly procedure for determining which court may exercise jurisdiction require[d] that the court must ascertain whether it has jurisdiction under the terms of the UCCJA; second, the court must determine whether there is a custody proceeding pending or a decree existing in another state which presently has jurisdiction. If the court finds that it has jurisdiction, and that there is no proceeding pending or a decree existing, then it must determine which state is the most convenient forum to exercise jurisdiction. If it finds another state is a more convenient forum, then under the standards of the UCCJA, *it may not exercise jurisdiction* [citation]." (*In re Marriage of Hopson* (1980) 110 Cal.App.3d 884, 899-900.)

In other words, under the UCCJA, the inconvenient forum doctrine was one of the rules for deciding which of two states that had concurrent jurisdiction should proceed to exercise that jurisdiction. Thus, it was said that "[a]pplication of the inconvenient forum doctrine [is] limited to situations where at least two states concurrently ha[ve] jurisdiction. [Citation.]" (*Brossoit v. Brossoit* (1995) 31 Cal.App.4th 361, 371, fn. 4; accord, *In re Marriage of Fox* (1986) 180 Cal.App.3d 862, 873.)

By contrast, "[t]he UCCJEA ensures that only one state has jurisdiction to make 'child custody determinations' . . . . [Citations.]" (*In re Marriage of Fernandez-Abin & Sanchez*, *supra*, 191 Cal.App.4th at p. 1037.) "[A] major aim of the UCCJEA is to *avoid*

10

'concurrent jurisdiction.' [¶] Indeed, concurrent assertion of jurisdiction by more than one court was one of the chief problems that led to the enactment of the UCCJEA." (*In re Marriage of Nurie*, *supra*, 176 Cal.App.4th at p. 497.) The UCCJEA "provide[s] a comprehensive, integrated system designed to provide that one — and only one — court may exercise jurisdiction over custody determinations at any given time. [Citation.]" (*Id*. at p. 498.) "'[E]xclusive, continuing jurisdiction' [i]s one of the cornerstones of the UCCJEA, making it one of the crucial ways in which the two regimes differ. [Citations.]" (*Id*. at p. 497, fns. omitted.)

Now, under the UCCJEA, if California is the home state of the child, a California court has *exclusive* jurisdiction. (Fam. Code, § 3421, subd. (a)(1).) However, once that court finds that California is an inconvenient forum, another state (provided it has also adopted the UCCJEA) thereby *gains* exclusive jurisdiction. (Fam. Code, § 3421, subds. (a)(2), (a)(3); see also Fam. Code, § 3426, subd. (a).)

It is also worth noting that UCCJEA inconvenient forum principles apply in California regardless of whether the other state has adopted the UCCJEA. Thus, a California court that has exclusive home state jurisdiction under section 3421(a) may decide that Massachusetts is a more convenient forum, even though Massachusetts has not adopted the UCCJEA (9 pt. 1A West's U. Laws Ann. (1999) U. Child Custody Jurisdiction Act, 2018 pocket pt., pp. 84-85), and even though Massachusetts could conceivably determine, using its own rules, that it should not exercise jurisdiction. At first glance, this poses a risk that no court will exercise jurisdiction, but the safety net is

11

that the California court will merely stay the proceeding; if Massachusetts declines to exercise jurisdiction, the California proceeding may resume. (Fam. Code, § 3427, subd. (c).)

In sum, then, it is no longer true that the inconvenient forum doctrine applies only when two states have concurrent jurisdiction. In fact, it is logically impossible (unless the other state, like Massachusetts, is applying non-UCCJEA rules).

Nevertheless, the father relies on pre-UCCJEA cases such as *Hopson* and *Brossoit*. He acknowledges that they were decided under the UCCJA, but he blithely declares that "the basic principles at issue here have continued into the current statutory scheme." But not so.

The father does also rely on one post-UCCJEA case — *In re Marriage of Nurie*, *supra*, 176 Cal.App.4th 478. There, the wife refused to return the couple's child from Pakistan. (*Id*. at p. 485.) A California court awarded custody to the father, but the wife and child remained in Pakistan. (*Id*. at pp. 486-487.) Thereafter, the husband went to Pakistan and the parties litigated custody in Pakistan, culminating in an order that the child not be removed from Pakistan. (*Id*. at pp. 486-487.) Nevertheless, the father took the child to California. (*Id*. at p. 489.) The California court refused to enforce the Pakistani court's orders and refused to find that Pakistan was a more convenient forum. (*Id*. at pp. 489-490.)

The appellate court discussed the UCCJEA's emphasis on exclusive jurisdiction and its avoidance of concurrent jurisdiction. (*In re Marriage of Nurie*, *supra*, 176

12

Cal.App.4th at pp. 496-498.) It then held that the California court had acquired exclusive jurisdiction and had never lost it. (*Id*. at pp. 498-511.) It further held that the trial court did not err by refusing to find that Pakistan was a more appropriate forum. (*Id*. at pp. 513-514.) It reviewed the trial court's finding on each of the relevant statutory factors and concluded: "In light of [its] thoughtful analysis, we cannot say that the trial court abused its discretion in refusing to declare Pakistan a more convenient forum. *A court should decline jurisdiction as an inconvenient forum only when there is concurrent jurisdiction elsewhere.* [Citing *Brossoit*.] . . . Here, as discussed, California had exclusive, continuing jurisdiction, and Pakistan had no modification jurisdiction under UCCJEA principles." (*Id*. at p. 514, italics added.)

Given the court's in-depth discussion of the fact that the UCCJEA does not recognize concurrent jurisdiction, we are at a loss to understand what it meant by the italicized language. In any event, this language does not appear to be a crucial part of the court's reasoning. Rather, the court upheld the trial court's ruling that Pakistan was not a more appropriate forum based on the trial court's analysis of the statutory factors, plus the fact that Pakistan had not acquired modification jurisdiction.

We therefore conclude that the trial court could properly find that India was a more appropriate forum, even though India did not have concurrent jurisdiction under the UCCJEA.

13

B.      *Failure to Communicate with the Indian Court*.

In a subsidiary argument — two sentences long — the father asserts that the trial court erred by failing to communicate with the Indian court.  As the mother notes, the trial court raised the topic of communication between the two courts, but counsel for the father opposed any communication.  Thus, the asserted error, if error at all, was invited. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 ["'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal."].)

V

FINDINGS REGARDING THE STATUTORY

INCONVENIENT FORUM FACTORS

The father also contends that the trial court erred in evaluating the relevant statutory factors.

A.      *Additional Factual and Procedural Background*.

The trial court made specific findings regarding each of the factors that are relevant to an inconvenient forum determination under section 3427.  To show how thorough the trial court's analysis was, without unduly lengthening this opinion, we attach the trial court's order as Appendix A.

B.      *Discussion*.

"A trial court's ruling to stay custody proceedings on the basis that another forum is more convenient is purely discretionary, and we will not reverse the ruling on appeal

14

unless there was a clear abuse of discretion. [Citation.] (*Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1316.) "The court has broad discretion with respect to weighing the applicable factors and determining the appropriate weight to accord to each." (*Id*. at p. 1320.)

The father asserts that the trial court did not give the section 3427 factors "careful consideration." Hardly. We have attached the trial court's ruling because it displays, on its face, thoughtful and detailed consideration.

The father criticizes the trial court's finding on the fifth factor — an agreement of the parties. He cites authority to the effect that jurisdiction under the UCCJEA cannot be conferred by consent. (See, e.g., *In re A.C.*, *supra*, 13 Cal.App.5th at p. 668.) This contention would read the fifth factor out of the statute. Whether India has jurisdiction under the UCCJEA and whether India is a more appropriate forum are two entirely separate issues. India can be a more appropriate forum, even if it does not have jurisdiction under the UCCJEA; it may follow its own jurisdictional principles.

The father also challenges the trial court's finding on the seventh factor — the ability of each court to decide the issue expeditiously. He complains that, by finding that it had no evidence on this point, it "abdicated its responsibility" to "make an analysis." He does not dispute, however, that there was, in fact, no evidence on this point. In the absence of evidence, there was nothing for the court to analyze.

He asserts that the trial court's finding on this factor is inconsistent with *In re Marriage of Sareen* (2007) 153 Cal.App.4th 371, which stated, "India's jurisdiction in the

15

pending custody proceeding . . . was not in substantial conformity with the UCCJEA." (*Id*. at p. 377.) In *Sareen*, however, the issue was whether an Indian court, in which a custody proceeding concerning the child was already pending (*id*. at pp. 374-375), had "jurisdiction substantially in conformity with" the UCCJEA, because this would have precluded a California court from exercising jurisdiction. (Fam. Code, § 3426, subd. (a).) By contrast, for purposes of inconvenient forum, there is no requirement that the other forum have jurisdiction in substantial conformity with the UCCJEA. Even without such jurisdiction, it may be able to resolve the custody issues expeditiously.

Finally, the father argues that child's connections to India are "short-term" and "insignificant." Once again, he is relying on pre-UCCJEA law. Under the UCCJA, in deciding an inconvenient forum issue, one of the factors that a trial court had to consider was whether "another state has a closer connection with the child and his family . . . ." (Civ. Code, former § 5156, subd. (3)(b), Stats. 1973, ch. 693, § 1, p. 1255; accord, Fam. Code, former § 3407, subd. (c)(2), (Stats. 1992, ch. 162, § 10, pp. 557.) Thus, in *Plas v. Superior Court* (1984) 155 Cal.App.3d 1008, the appellate court held that the trial court abused its discretion by refusing to find that France was a more appropriate forum (*id*. at pp. 1019-1022), in part because "[the child] and his parents have a closer connection with France than with California . . . ." (*Id*. at p. 1022; see also *id*. at p. 1019.) Under the UCCJEA, however, a connection with the other state is no longer a factor.

Accordingly, we conclude that the father has not shown that the trial court abused its discretion in evaluating the section 3427 factors.

16

## VI

## DISPOSITION

The order appealed from is affirmed.  The mother is awarded costs on appeal against the father.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ  
                                                                P. J.

We concur:

CODRINGTON  
                    J.

SLOUGH  
                    J.

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

| R.B. v. D.R. | DATES 4/27/2017 | DEPT. H-4 | NUMBER SWD1700469 |
|---|---|---|---|
| | REPORTER Vonda Bassett | | |

PROCEEDING
Statement of Decision

Based upon the testimony at trial this court finds that the proper "home state" for jurisdiction is in California. The following evidence was considered by the court in coming to this conclusion.

1) By the mother's own testimony, several times she mentioned that the family went to India for a "visit." Each time they returned to California upon visiting India, even though the visits were of significant duration.
2) The parties purchased a home in California and did not own a home in India, although there was mention that they looked for property in India while visiting there.
3) The child _____ was born in California.
4) Mr. B_____ lived in California before his marriage. He returned to India to marry Ms. R_____ and then the couple came back together to the United States, where Mr. B_____ was employed.
5) The child _____, was enrolled in a school in Riverside County, California at the time the mother left for India in February 2017.
6) Although from 7/24/6 until 1/11/17, the child and mother were in India, they did not stay in India for six months. Based upon the totality of evidence the extended stay in India was for the purpose of staying for a wedding. They did not establish a residence in India, rather stayed with extended family.

Based upon these factors the court finds California has home state jurisdiction. The motion to dismiss father's petition for lack of jurisdiction is therefore, denied.

The next analysis before the court is pursuant to FC 3427, whether this court should find that California is an Inconvenient Forum. The court must consider whether it is appropriate for the court of another "State" to exercise jurisdiction. To assist the court FC 3427 sets forth eight (8) factors for the court to consider. The factors are set forth below in the order that they appear in the code. The court will address the relevant facts of this case following each factor.

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

The mother testified the several incidents of domestic violence while the parties were in India in November of 2016. One involved allegations of the

father pushing the mother and locking her in a room for an extended period of time. She additionally testified that the father had slapped the minor of the side of the face, leaving a red handprint on the child's face. The court did review the photograph of this injury and it appeared consistent with the testimony. There is currently a restraining order in place in India, protecting the mother and child, with a future evidentiary hearing set on this issue.

(2) The length of time the child has resided outside this state.

The child was born in California on 10/18/2013 and has resided in the state for most of her life. The child has spent extensive time in India. Most recently she spent five and a half months in India, returning in January 2017. She returned to India with her mother on 2/10/2017 and has been there ever since.

(3) The distance between the court in this state and the court in the state that would assume jurisdiction.

The distance between the two courts is as significant as it could get. The courts are on opposite sides of the globe. It would be inconvenient for either party to come to the other court, although both parties have traveled extensively back and forth from India to California. I don't find that this factor is as significant as one might think.

(4) The degree of financial hardship to the parties in litigating in one forum over the other.

It would pose a financial hardship to the father to litigate this matter in India. Likewise, it would pose a similar problem for the mother to litigate this matter in California. The parties to appear to have access to financial support that would allow for such travel. The support from extended family would mitigate the financial hardships if the matter was litigated in India.

(5) Any agreement of the parties as to which state should assume jurisdiction.

There does not appear to be any written or express agreement that the parties had that either California or India should assume jurisdiction. However, the mother did present testimony and a text between herself and the father in February 2017 that could be an implied agreement. The mother testified that this was her understanding of the father's communication. The text from the father while he was working in Florida, to the mother who was in California, was admitted as Respondent's B for identification and states in part, "HERE IS MY FINAL DECISION. Pack up and go back to India and do whatever you want...police court or whatever, I will face it."
In response to the question about why the father would mention dealing with police or court, the mother testified that they had been discussing the prior incidents of domestic violence and whether she would report these incidents. Mother claims she got this text on 2/7/17 and relying upon his final decision moved back to India within days.

(6) The nature and location of the evidence required to resolve the pending

litigation, including testimony of the child.

The evidence that would be required to resolve the pending litigation is both in India and California. California is the home state. While the property owned by the parties is here in California, this is not a dissolution action. This is a petition to establish custody and support. The mother and child are in India, the father here in California.

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

Each state, California and India, have pending matters involving Mr. B█████ and Mrs. R████. His action for custody and her action for guardianship and a domestic violence restraining order. I have no evidence that either state couldn't decide the pending matters expeditiously. This does not appear to be a factor of any significance.

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

California, having home state jurisdiction, is familiar with the issues at hand regarding custody. The child's school, although attended briefly, is here in California. California is able to conduct mediation and is able to allow telephonic communication in mediation and court for the mother.

An important part of the custody issue will deal with the issues of domestic violence. In this case, India is better set up to address these issues. The incidents occurred in India. The potential witnesses, except the father, reside in India. The child is in India. California is not set up to conduct mediation with a child by phone.

After considering the above factors in appears clear to this court that California is an inconvenient forum to accurately and efficiently address the issues of custody and support. The primary factors that the court relies upon to come to this conclusion is the existence of the domestic violence case in India and the father's communication to the mother via a text on 2/7/17. I find that text was an implied agreement for the mother to leave California and that future issues would be addresses in the Indian courts.

The court also considered the fact the all parties have unlimited access to India as they are citizens of that country, likewise the minor child has a lifetime visa. The parties are not citizens of the United States. The father is here on a work visa and the mother's visa was contingent upon father's visa. The child, as indicated, is a citizen of this country. If California retained jurisdiction and for some reason either party lost their visa it could pose a hardship in participating in future hearings.

The court finds California is an inconvenient forum and finds that India is a more convenient forum. Therefore, pursuant to FC 3427 the court stays the father's petition for custody and support upon the condition that the mother proceeds with seeking a proper custody motion in India.

IT IS SO ORDERED.

Date: ___5/15/17___

Bradley O. Snell
Commissioner of the Superior Court